CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MICHAEL G. LAGRAMA (CABN 252734)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-436-7241
    FAX: (415) 436-7234
    Michael.Lagrama@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:22-cr-00101-WHO |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| WILMER ARTEAGA (AKA SILVIO CRUZ-VELASQUEZ), | |
| Defendant. | |

I. **INTRODUCTION**

As alleged in a two-count Superseding Indictment, defendant Wilmer Arteaga pleaded guilty to Possession with Intent to Distribute 40 Grams and More of a Mixture and Substance Containing a Detectable Amount of Fentanyl (Count One) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi), and to Felon in Possession of Ammunition (Count Two) in violation of 18 U.S.C. § 922(g)(1). Under the advisory Sentencing Guidelines, Arteaga is subject to a sentence of between 140 and 175 months. The United States respectfully recommends that Arteaga be sentenced to 156 months, which is towards the middle of the Guidelines range. This sentence is sufficient but not greater than necessary to achieve the sentencing objectives in 18 U.S.C. § 3553(a) because Arteaga's pattern of violence and unremitting

drug dealing render him a danger to public safety. Regarding his instant offenses, on November 9, 2021, Arteaga fired two shots at an occupied vehicle during a road rage incident and possessed with intent to distribute 1,155 gross grams of fentanyl, among other drugs. Several days prior to this incident, on November 3, 2021, Arteaga fired two shots at different individual and shot an innocent bystander in the leg. The two shooting incidents show his predilection for gun violence. Arteaga's persistent drug dealing is also concerning. Arteaga has two drug-related convictions and at least 11 prior arrests for drug dealing. He has also been deported six times. But Arteaga's prior convictions, arrests, and deportations have not dissuaded him from engaging in increasingly dangerous criminal activity.

Therefore, in accordance with the sentencing objectives in section 3553(a), Arteaga should be sentenced to 156 months followed by 4 years on supervised release. The Court should also order Arteaga to forfeit the $3,428, firearm, and ammunition found in his possession at the time of his arrest on November 9, 2021.

## II. BACKGROUND

### A. Circumstances of Offenses

On November 9, 2021, at approximately 6:30 p.m., homicide sergeants from the San Francisco Police Department (SFPD), witnessed two vehicles involved in road rage near Turk and Larkin Streets in San Francisco, California. Presentence Investigation Report (PSR) at 5. One vehicle was a white two-door BMW and the other a dark-colored SUV. *Id*. The two vehicles pulled alongside each other and then sped off. Both vehicles headed west on Turk Street and stopped at a red-light intersection. *Id*. The SUV was in front, and the BMW was in the back. *Id*. After the vehicles stopped, the SUV reversed and collided into the front end of the BMW. *Id*.

The driver of the BMW then exited the vehicle with a semi-automatic pistol in hand. PSR 6. The sergeants heard two gunshots as the SUV sped off. *Id*. The driver of the BMW re-entered his vehicle and sped off northbound on Van Ness Avenue. *Id*. Officers later recovered one fired 9mm Lugar casing and vehicle debris from the intersection where the shooting occurred. *Id*. Officers subsequently located the BMW and observed a person (later identified as Arteaga) standing next to a closed passenger door of the vehicle. *Id*. Officers directed Arteaga to put his hands on his head and

detained him. *Id*. Arteaga provided various names to the officers, including "Anthony Velasquez," "Joseph Velasquez," and "Anthony Cruz-Velasquez." *Id*.

Arteaga disclosed that he had ingested fentanyl, so officers summoned medical personnel to the scene. PSR at 6. As an officer was helping Arteaga onto a gurney, the officer located a firearm inside Arteaga's jacket pocket, specifically a black pistol with a Glock slide bearing serial number BSWX125. *Id*. The firearm was loaded with eight live rounds of Smith and Wesson and ZQ1 ammunition. *Id*. On Arteaga's person, officers also found $3,428 in different denominations, marijuana, and three small baggies containing a white powdery substance. *Id*. Officers also administered a gunshot residue collection kit, swabbing both Arteaga's hands.

During a search of the BMW, officers found a fired 9mm cartridge casing inside that vehicle. PSR at 6. Inside the BMW, officers also found a backpack in the front passenger's side of the vehicle. *Id*. Inside that backpack, officers found ten 9mm unfired cartridges and a large quantity of drugs: 55 plastic baggies containing 1,155 gross grams of fentanyl, three plastic baggies containing 1.2 gross grams of cocaine, 5.9 gross grams of methamphetamine, 5.9 gross grams of heroin, and several small bags containing marijuana (unspecified amount). *Id*.

According to an SFPD ballistics report, the fired 9mm cartridge casing found at the intersection of Turk and Van Ness where the shooting occurred, and the fired 9mm cartridge casing found inside the BMW, were both fired from the firearm that was found on Arteaga's person. Ex. 1, Ballistics Rep. And based on an SFPD gunshot residue analysis, Arteaga had gunshot residue on both his hands. Ex. 2, Gunshot Residue Rep.

**B. Procedural History**

On December 27, 2021, in a criminal complaint, the government charged Arteaga with Possession with Intent to Distribute 40 Grams or More of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and Felon in Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1). Dkt. 1.

On March 9, 2022, in a two-count Information, the government again charged with Arteaga with Possession with Intent to Distribute 40 Grams or More of Fentanyl (Count One) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and Felon in Possession of Ammunition (Count Two) in violation of

18 U.S.C. § 922(g)(1). Dkt. 2. The Information contained a forfeiture allegation pursuant to 21 U.S.C. §§ 853(a), 924(d) and 28 U.S.C. § 2461(c). *Id*.

In a two-count Superseding Indictment, dated May 29, 2025, the government charged Arteaga with Possession with Intent to Distribute 40 Grams and More of a Mixture and Substance Containing a Detectable Amount of Fentanyl (Count One) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi), and Felon in Possession of Ammunition (Count Two) in violation of 18 U.S.C. § 922(g)(1). Dkt. 109. The Superseding Indictment specifically alleged that the two spent or fired shell casings—one found at the shooting scene and the other found inside the BWM—were part of the factual allegations for Count Two, Felon in Possession of Ammunition. *Id*. The Superseding Indictment reasserted a forfeiture allegation for the $3,428, firearm, and ammunition seized from Arteaga at the time of his arrest. 21 U.S.C. § 853(a), 18 U.S.C. § 924(d), and 28 U.S.C. § 2461(c). *Id*.

On June 12, 2025, Arteaga pleaded guilty to Counts One and Two of the Superseding Indictment. Dkt. 118. During the plea colloquy, Arteaga admitted that officers found "over 1,000 grams of fentanyl inside" the BMW. Dkt. 123 (Hearing Transcript) at 12.

**C. Sentencing Guidelines Calculation**

U.S. Probation has issued the following advisory Guidelines calculation:

a. Base Offense Level, U.S.S.G. §§2D1.1(a)(5) and (c)(5) — 30
b. Possessed a Dangerous Weapon, U.S.S.G. §2D1.1(b)(1) — +2
c. Acceptance of Responsibility, U.S.S.G. §§ 3E1.1(a), (b) — -3
d. Final adjusted offense level — 29

PSR at 8. U.S. Probation also determined that Arteaga has a criminal history score of 10 (Criminal History Category V) and is subject to a Guidelines sentencing range of 140 to 175 months. *Id*. at 11, 21. The United States agrees with U.S. Probation's Sentencing Guidelines calculation.

U.S. Probation recommends that Arteaga be sentenced to 90 months, which is approximately a 35% downward variance from the low-end of the Sentencing Guidelines range. PSR at 27. But for the reasons stated below, the United States recommends that Arteaga be sentenced to 156 months in custody followed by 4 years on supervised release.

## III. DISCUSSION

### A. Legal Standards

The Court should impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also* 18 U.S.C. § 3553(a). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the advisory Guidelines. *Id*.

After determining the appropriate advisory Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness considering the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Under Section 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) The nature and circumstances of the offenses and the history and characteristics of the defendant;

(2) The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) The need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) The need for the sentence imposed to protect the public from further crimes of the defendant; and

(5) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B. Sentencing Recommendation by the United States

The United States recommends that the Court impose on Arteaga a custodial sentence of 156 months followed by 4 years on supervised release.

#### 1. Nature and circumstances of Arteaga's offenses and his history and characteristics

Arteaga's pattern of violent conduct and extensive history of drug dealing render him a threat to public safety, and therefore, a custodial sentence of 156 months is appropriate.

### a. *Arteaga's propensity to engage in violence renders him a danger to public safety.*

Here, on November 9, 2021, Arteaga got out of his car, pulled out a gun, and fired two shots at another car during a road rage incident. PSR at 5. Thus, Arteaga could have killed (or may have intended to kill) the occupants of the vehicle and he could have also killed innocent bystanders on the street. Notably, Arteaga committed this shooting on the same street as an elementary school and less than one block away from the Phillip Burton Federal Building and U.S. Courthouse in San Francisco. That Arteaga knowingly possessed a firearm as a felon and fired two shots at an occupied vehicle suffice to establish that he poses a substantial risk of engaging in violence.

Just six days earlier, on November 3, 2021, Arteaga fired shots at a different person a couple blocks way in the same neighborhood. PSR at 16. In that incident, Arteaga pulled out a firearm from his backpack and fired two shots at a victim in an ambush style assault. *Id*. Arteaga ended up shooting an innocent bystander (a second victim) in the leg. Ex. 3, SFPD Rep. at 1. Consequently, the San Francisco District Attorney's Office charged Arteaga with attempted murder and assault with a firearm, among other crimes, and those charges are still pending. PSR at 16. As these two separate incidents show, Arteaga will readily shoot and kill people on the streets without regard for the safety of others.

Arteaga was also previously arrested for assault with a deadly weapon. PSR at 14. On January 20, 2017, Arteaga got into a verbal altercation with a person and later walked up to that person and stabbed him in the chest. *Id*. Thus, from stabbing to shooting people, Arteaga has exhibited an increasingly dangerous pattern of violence rendering him a danger to public safety.

### b. *Arteaga's persistent drug dealing also renders him a danger to public safety.*

Arteaga's continuous drug dealing also shows his reckless disregard for the life and safety of others. Here, Arteaga possessed with intent to distribute approximately 1,155 grams of fentanyl, among other drugs. PSR at 6. Thus, Arteaga intended to sell a significant quantity of an extremely lethal drug, regardless of the life-threatening consequences of his actions. Indeed, Arteaga has been an undeterred drug dealer despite his convictions and numerous arrests for drug offenses. *Id*. at 9-16. Specifically, Arteaga has two drug-related convictions. PSR at 9-10. In 2012, he was convicted of distributing a

controlled substance (*i.e.*, cocaine) in Utah and sentenced to 30 days in jail. *Id*. at 9. In 2016, after he was found in possession of 30 individually wrapped packages of heroin, Arteaga was convicted of accessory in San Francisco and sentenced to 6 months in jail. *Id*. at 10.

Arteaga has also been arrested for drug dealing at least 11 times since 2010, mostly in San Francisco. PSR at 11-18. Arteaga likely would have had more drug dealing arrests had he not been convicted of three criminal immigration offenses in 2012, 2013, and 2019, respectively, and deported six times. *Id*. at 9-11; Dkt. 99 (USA's Opp. to MTD), at Ex. 1 (Deportation Orders). Each time he was deported, however, Arteaga unlawfully re-entered the United States and resumed his criminal activity. PSR. at 9-18. In short, for over 10 years, Arteaga has flagrantly violated the laws of the United States.

Therefore, Arteaga's offenses in this case are the culmination of his pattern of violence and unremitting drug dealing, which render him a substantial risk to public safety. Accordingly, a custodial sentence of 156 months is warranted.

To his credit, Arteaga eventually took responsibility for his criminal offenses and expressed remorse. He has also suffered from substance addiction and experienced poverty and traumatic life events, such as the murder of his parents. Nevertheless, on balance, the nature of Arteaga's offenses and criminal history warrant a 156-month custodial sentence.

### 2. Need for the sentence imposed to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses

A 156-month sentence also reflects the seriousness of Arteaga's firearm and drug offenses and promotes respect for the law, which sets forth stringent punishment for these offenses. Further, a 156-month sentence constitutes just punishment because it ensures that Arteaga is held accountable for committing gun violence and for intending to sell a highly lethal drug.

### 3. Need for the sentence to afford adequate deterrence to criminal conduct

Imposing a 156-month custodial sentence on Arteaga also promotes specific deterrence. As noted, Arteaga has continued to engage in criminal activity despite his prior convictions, arrests, and deportations. His actions have become increasingly dangerous—both in terms of violence and the quantity and type of drugs he is selling. Thus, a sentence of 156 months will show Arteaga that the costs

of his criminal conduct substantially outweigh its perceived benefits, so that he does not repeat his behavior again.

A 156-month sentence will also promote general deterrence because it sends a strong message to felons that they will face a significant prison sentence if they knowingly possess a firearm and use that firearm to attempt to kill or inflict bodily injury on others. It also sends a strong message to current and would-be drug dealers that they, too, will face a significant prison sentence if they are caught selling dangerous drugs, and that the length of their sentence will increase based on the quantity and type of drugs involved. And if a person, like Arteaga, simultaneously falls into both categories of offenders, the person's sentence will be particularly significant to prevent incidents of gun violence that are attendant in drug trafficking. Thus, a custodial sentence of 156 months promotes both specific and general deterrence.

### 4. The need for the sentence imposed to protect the public from further crimes by Arteaga

A 156-month custodial sentence is, moreover, warranted to protect the public from further crimes by Arteaga because the sentence will ensure that, for a significant period, he is not in the community engaging in gun violence or acting as a steady purveyor of poisonous drugs.

### 5. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

Further, a 156-month sentence would not result in sentencing disparities for similarly situated defendants. As U.S. Probation noted, during the last five fiscal years (2020-2024), there were 29 defendants whose primary guideline was §2D1.1 and Fentanyl was the primary drug type, with a Final Offense Level of 29 and a Criminal History Category of V, after excluding defendants who received a §5K1.1 substantial assistance departure. PSR at 24. For the 29 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 123 months and the median length of imprisonment imposed was 120 months. *Id*.

Notably, these figures from the Judicial Sentencing INformation (JSIN) platform reflect the average (123 months) and median (120 months) sentences for defendants convicted of a *drug/fentanyl* offense who have the same final base offense level and criminal history category as Arteaga. But

Arteaga did not just commit a drug offense; he also unlawfully possessed a firearm and used it to shoot twice at an occupied vehicle. Also, while Arteaga has the same criminal history category as defendants in this JSIN cohort, his convictions and arrests are not necessarily the same. Thus, although the government's recommended custodial sentence of 156 months is higher than the average and median sentences imposed on defendants in this JSIN cohort, the higher sentence recommendation is nonetheless justified based on the aggravated nature of Arteaga's current offenses and criminal history. Accordingly, a custodial sentence of 156 months would not result in a sentencing disparity because it is based on the particular facts in Arteaga's case.

## CONCLUSION

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence Arteaga to 156 months in custody followed by 4 years on supervised release. The United States also requests that the Court order Arteaga to forfeit the $3,428, firearm, and ammunition found in his possession at the time of his arrest on November 9, 2021.

DATED:       September 11, 2025                                Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Michael G. Lagrama*
MICHAEL G. LAGRAMA
Assistant United States Attorney

1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  MICHAEL G. LAGRAMA (CABN 252734)
   Assistant United States Attorney
5
     450 Golden Gate Avenue, Box 36055
6    San Francisco, California 94102-3495
     Telephone: (415) 436-7241
7    Fax: (415) 436-7234
     Michael.Lagrama@usdoj.gov
8
   Attorneys for United States of America
9
                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11
                        SAN FRANCISCO DIVISION
12

13 | UNITED STATES OF AMERICA,           ) CASE NO. 3:22-CR-00101-WHO
                                         )
14 |     Plaintiff,                      ) **DECLARATION OF MICHAEL G. LAGRAMA**
                                         )
15 |   v.                                )
                                         )
16 | WILMER ARTEAGA (AKA SILVIO CRUZ-    )
   | VELASQUEZ),                         )
17 |                                     )
   |     Defendant.                      )
18 |                                     )
                                         )
19

20    I, Michael G. Lagrama, state and declare:

21    1. I am an Assistant United States Attorney for the Northern District of California. I have been

22       assigned to represent the United States of America in this proceeding.

23    2. Attached as Exhibit 1 is a true and correct copy of a ballistics report that our office received

24       from the San Francisco Police Department (SFPD) and produced as discovery to defense

25       counsel.

26    3. Attached as Exhibit 2 is a true and correct copy of a gunshot residue analysis/report that our

27       office received from the SFPD and produced as discovery to defense counsel.

28    4. Attached as Exhibit 3 is a true and correct copy of an incident report that our office received

from the SFPD and produced as discovery to defense counsel.  The report redacts personal identifying information, including the full names of the shooting victim and a witness.  There are additional reports from the incident, which occurred on November 3, 2021, that are not attached as an exhibit but have been produced as discovery to defense counsel.

I declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief.  Executed on September 11, 2025, in San Francisco, California.

                                                            */s/ Michael G. Lagrama*
                                                            MICHAEL G. LAGRAMA
                                                            Assistant United States Attorney